And you all were serving by appointment, and we thank you very much for your services to the court and to your clients, and thanks as well to the government. Our third case for this morning is Charles Howlett v. Jeffrey Hack. Mr. Lenkowski, we're ready for you if you're ready for us. Good morning, Your Honor. Good morning. May it please the court, this case involves a number of different issues. One of the appellees did not file a brief, and my understanding is we're not addressing those issues today. The first issue... No, you can certainly address them. The appellee who didn't file a brief can't address them, but we don't silence you. Okay, well, thank you. I appreciate that, Your Honor. The first, and I believe the most clear, made by the district court in this case involves the application of the Indiana statute of limitations for a false arrest claim. And you're talking only about the state law claim, I assume, since Wilson v. Garcia doesn't really give us any room on the two-year statute for any federal claim. Yes, Your Honor, that is correct, and I believe we conceded the Section 1983 false arrest claim at the district court level and proceeded on the argument that the state false arrest claim applied a five-year instead of a two-year statute of limitations. This court in the Blake v. Catter case 33 years ago actually addressed a predecessor statute of the current five-year statute of limitations, which was written exactly the same. Now, can I just ask, though, why should we care whether it's two years or five years if the district court was correct to decide that there was probable cause to arrest Mr. Howlett? Well, I disagree that the district court... I know you disagree with that, but why isn't probable cause to arrest really a bigger issue, in a sense, for you than this five-year business? It certainly is a larger issue. I would agree with that. The way I was proceeding was taking it in the order that the district court... I'm having trouble understanding why there was not probable cause to detain him, given what the police officers knew at the time he shows up. Certainly, certainly, Your Honor. And this was a false arrest claim under Indiana state law, but as far as I can tell, the probable cause standard under Indiana law is the same as the standard under the Fourth Amendment. The reason probable cause does not exist, and the problem I am having with the arguments that have been made by the appellee here, are that their argument, essentially, is that Mr. Hack said it was so. He said he saw Howlett. He saw Mr. Howlett enter his house. He saw Mr. Howlett assault him. That's basically their argument. Well, it's a couple of things. It's that. I mean, they have an eyewitness, which the When Howlett comes back after this woman, or whoever it was, calls him, he actually knows, oddly enough, what the dispute is about. He knows it's about alleged entry into Hack's place. And you make a big deal out of the fact that whether the shirt was tan or white or something, but this is happening at 6.30 in the morning, and we usually understand that witnesses may not have a perfect recollection of shades of color at that time of day. Yes, I certainly understand that, Your Honor, but the problem with that is that it ignores the fact that the police officer initially said that Hack had identified Howlett in what he was actually wearing. Now, why isn't that just a trivial? I mean, all this is is probable cause. This isn't a preponderance of the evidence or reasonable doubt. Again, if an eyewitness says, this is the man who broke into my house, and then the person actually says some things that seem to corroborate that, why isn't that enough of a probable cause? I would address your attention to the Beavier v. Huckel case, Your Honor, and there are some broad principles that we can glean from Beavier v. Huckel. One of them is that a police officer may not close his eyes to facts that would... Okay, look. What seems to me to be a big problem for Howlett, there's no evidence that he had any right to be there. He's got a phone number on a little piece of paper. That's it. Did he ever say how long he had been authorized? I think you're thinking of the case. Pardon? I think you're thinking of the case, the squatter case. Oh, this is not the squatter case. No, no, this is the guy who breaks into the neighbor's... Not yet. Oh, okay. My mistake. That's okay. As I was saying, the Beavier v. Huckel case, it applies to a specific set of facts, but I believe it addresses some broad principles. One principle is a police officer may not close his eyes to facts that would demonstrate a lack of probable cause. Another is that... But what did he close his eyes to? They don't have to resolve all disputed issues. Probable cause means we move on. Sure. There were a number of issues, and I think we need to consider all of them, not just simply look at them one by one. We need to consider the broader picture. Those specific facts, as we've addressed, one of the facts was the color of the shirt. One of them was that he had contorted some statements that Mr. Hallett had made to say that he had entered the house through the bathroom, which he had never actually said. Another issue involves him claiming that there were footprints, and footprints are something you can go look in the mud and see footprints. It turned out that there were no matching footprints at the scene. So the Beavier v. Huckel case, again, it said that reasonable avenues of investigation need to be pursued when it is unclear that a crime has occurred. And third, continuation of an unlawful arrest becomes unlawful when facts discovered dissipate probable cause. And in this case, I think there were a number of... Let me just interrupt you and ask. I'm looking at page six of the red brief, which is recounting what happened from their perspective, and it says toward the top of the page, Officer Beasley calls Hallett. During the telephone conversation, Hallett stated he would return to the scene to speak with Officer Beasley, and further added, without any questioning, that he never got into Hack's pants and or went into his bathroom that night. So that's what I'm thinking about when I say, isn't it more than just Hack's word for it? How it is saying things that could be said, it seems, or a rational police officer could think, these could be said only by somebody who has somehow been involved in this break-in. Part of that statement, Hack denied making, specifically the part about the bathroom. He said that Hallett, I'm sorry, Hallett denied making that statement. He said that Hack had, the police officer said that Hack had said that, and then Hallett had basically repeated the same thing. So part of the problem there is that that statement, or that Hallett denied actually making half of that particular statement. So what weight would the denial have to be given in a probable cause determination? I'm sorry, I didn't hear you. Could you repeat? What weight would his denial be entitled to in a probable cause determination? I believe that the fact that Mr. Officer Beasley used this statement in the police report, which was then duplicated as the probable cause affidavit, which established the basis for holding Mr. Hallett in jail prior to trial. So I think that was certainly something that was relied on, an alleged matching up of certain statements, which actually the statements did not completely match up. I'm not sure what your answer to Judge Posner was. Usually even if there are mistakes in the facts underlying probable cause, that doesn't prevent probable cause from existing if a rational police officer could have thought these things. I guess it's Mr. Hallett's theory that all of these things are riddled with lies and so on. Well, I think that there may be certain mistakes that are completely irrelevant. Like, for example, if Mr. Hack had said, oh, well, I saw Mr. Hallett eating a bacon sandwich. He was eating a chicken sandwich. That would be completely irrelevant. But this was not a case where the things identified were completely irrelevant. They were things that led to the identification of Mr. Hallett. But that business of the pants, do you think a police officer would just make that up out of whole cloth? I think that's a matter for the finding of the jury to decide. In my personal opinion, it has happened. Did it in this case? Could have. And I believe that's a finding, something that the jury should be entitled to determine who is telling the truth. Could I ask you a question about the statute of limitations? Absolutely. So do you agree that what Beasley did would be a personal injury? So if he weren't a police officer, would be within the two-year statute? Yes. Now, if that's true, why wouldn't it make sense to interpret these two statute limitations to mean that if it's a personal injury, then whoever does it, that's the two years. And that's based on what we think about litigation of personal injury cases and it's individuals who are the plaintiffs who need to move along quickly. Whereas the five years reflects the fact that there would be all sorts of reasons for a suit against police. I mean, nothing to do with personal injury. So you have the five years to deal with the cases that aren't dealt with under a normal statute of limitations. Certainly, I appreciate that. Would that be a plausible way to fit the two together? Yes. Section 4, which is the general kind of personal injury statute of limitations, applies to a class of claims. Section 6, which is the statute of limitations which applies to public officers, applies specifically to a type of individual. So I believe that under the Indiana law, the specific law would be the law with respect to the public official would control over the general. Well, that's the opposite of what I think. But what basis do you have for that? Well, Your Honor, as I cited in my brief, the Ezell v. State case specifically adopted that line in which they said that a specific statute of limitations controls over a general. No, no, but they're both specific. There's no difference in generality between them. Well, I suppose... The police law of the five years is more general because it doesn't specify any particular act. It just has to be a cause of action, whereas personal injuries is narrower, more specific. Well, I think personal injury, with all due respect, Your Honor, is actually broader because it applies not simply to an individual person but to an entire class of lawsuits. So that's why I believe that that one is the general. But surely the five-year applies to at least as varied a collection of claims. It's any claim against a police officer. Any claim against a police officer. And it could be anything. It could be a breach of contract, defamation. It could be anything. Well, I think the concern here is that neither Section 4 or Section 6 contain a textual exclusion to the other, and that's why this has become an issue. Recently in Indiana, in 2012, in the Jefferson Barrow v. City of Jefferson case, this court's 1982 case of Blake, which actually adopted my line of argument, was cited. It didn't involve that specific issue, but it did cite it, and it suggests that Section 6 will be considered an exception to Section 4. Okay, thank you. All right. Thank you very much. Thank you. Ms. Katzen. Good morning. May it please the Court. Respectfully, the District Court dismissed Mr. Howlett's claims for essentially two reasons. One, the police officer had probable cause to institute the arrest, and two, the undisputed evidence established that there was no malice on the part of Officer Beasley. What remains now before the Court is a state law false arrest claim and a federal malicious prosecution claim. Both of them essentially have as an essential element to those claims the probable cause. In this case, we have a case of two neighbors who knew each other, who were intimately involved with one another, and we have a positive identification by the victim, Mr. Hack, on that night. This is not a case where Mr. Hack described to Officer Beasley the clothes that the intruder was wearing or his facial components or his hair. This is a case where Hack positively identified Mr. Howlett as the intruder. He saw him, he fought with him on that night, and he identified him to Officer Beasley on that night as the man who had entered his home unlawfully through the bathroom window. Now did Officer Beasley know that these two were repeat antagonists? Officer Beasley had no knowledge of these two before that night. He had never been on a run with them before. He had no interactions whatsoever with either Hack or Howlett. He had, on that day, essentially no communications or interactions prior to his arrival on the scene. And for that reason, he had absolutely no reason to doubt Mr. Hack's identification of Howlett as the intruder. And that's what he proceeded on in his investigation. I believe this court, as well as the state law, has said specifically that an eyewitness identification is sufficient to establish probable cause. Essentially what Mr. Howlett is attempting to argue is that Officer Beasley had to do more besides simply rely on the positive identification of Mr. Hack. He should have investigated the footsteps or the footprints. He is attempting to add an additional burden on a police officer that has never been articulated by any court. A positive identification by an eyewitness is sufficient to establish probable cause. And that's exactly what happened in this case. Moreover, on a second prong, there is absolutely no evidence in the record of any malice on Officer Beasley's part. He had no knowledge of these two prior to the incident. Besides the general allegations of malice, there is no factual evidence that shows that Officer Beasley had any personal animosity, in any way misidentified or lied in his probable cause affidavit, or changed facts. So without a showing of malice, and with the undisputed facts establishing a reliable probable cause by a credible witness on that night, Mr. Howlett just could not maintain either his state law false arrest claim or his federal malicious prosecution claim. On top of that, his state law false arrest claim is precluded by the statute of limitations. I have a question about that. Looking at the record, there seem to be two different dates floating around about when the criminal proceeding against Mr. Howlett ended in his favor. Your brief in the district court opinion says April 4, 2010. Howlett's brief seems to be looking at affidavits that indicate a date of April 14, and it can matter for whether this is timely or not. Your Honor, the evidence, which I think is Exhibit E and Exhibit G, would show that he was acquitted on April 4, 2010. That's the chronological case summary, but I have Exhibit E in front of me, and I'm not sure where that date appears. I'm looking at it. If we resolve this on other grounds, it may not matter, but I'm going to tell you there's just an ambiguity in the record. Of course, Your Honor. I don't have the exhibits in front of me actually at this time, but I have April 4 as the date that he was acquitted. I don't think Mr. Howlett would argue with that. I think that's why we're here arguing the statute of limitations issue because it was filed two years beyond the statutory period. That's why they essentially conceded on the federal false arrest claim as being beyond the two-year statute of limitations. So April 4 is the date I have as the correct date, and his complaint was not filed. Well, at the top of page 5 of the blue brief, it says, on April 14, 2010, Howlett was acquitted, docket 83-4, and then it says the case was commenced pro se on April 11, 2012, so that's within two years. Of course, if it was an April 4 date, it was commenced more than two years after the date of the acquittal. It's disturbing to have this unclear. I agree, Your Honor, and perhaps Mr. Howlett's counsel can clear that up. I have the date as April 4, and I think that's why the federal false arrest claim was dismissed because it exceeded the statute of limitations. So similarly, the state law one would exceed the two-year as well. Okay, well, we'll let Mr. Lenkowski illuminate us on that. Okay, and it's our position that both this court and the Indiana Court of Appeals have consistently and clearly stated that state law false arrest claims fall under the purview of the two-year statute of limitations. What about Barrow? Your Honor, Barrow is distinguishable. It's a zoning ordinance violation case. It is not dealing with a false arrest personal injury case. It's exactly the type of example of the public official statute and what it's meant to apply to, perhaps statutory ordinance violations, zoning violations by public officials, not a personal injury case. All personal injury, false arrest, state law, and federal cases unanimously state that the two-year statute of limitation applies. And if we were to follow Mr. Howlett's line of thinking in this case, what it is essentially going to do is open the door on any Section 1983 case, as we all know, are typically brought both federal and state law claims. It would create two contradicting statute of limitations for the federal 1983 false arrest claim and the state law false arrest claim before the same court. They don't have to be the same, do they? States can have a more particularized regime for statute of limitations than the federal courts use. That's true, Your Honor. In this case, state law does not support that. The problem I foresee with that is that essentially what you would be doing is allowing one single plaintiff in one single lawsuit before the federal court to have two different statute of limitations on the same cause of action. This is not supported by any case law. It's not supported by Indiana case law or the Seventh Circuit case law. I think it's clear that the two-year statute of limitation applies in this case and should apply to preclude the false arrest. Thank you, Your Honor. Unless you have any questions, I have nothing further. Thank you very much. Your time ran out, Mr. Lenkowski, but I would like you to answer my question. I'll give you a minute. Your question with respect to the date of the trial, Your Honor? Right. When was the proceeding terminated in Mr. Howlett's favor? You say the bottom of 4 and 5. Howlett remained in jail pending his trial. Docket this. On April 14, he was acquitted. Yes. He was acquitted on April 14, 2000. The date was April 14. Where did April 4 come from? I do not know where April 4 came from. The only issue where the statute of limitations is an issue is with regard to the false arrest claim. With respect to the malicious prosecution claim, the case law is pretty clear that the accrual of that occurs after the case has been disposed of. Right. So the statute of limitations issue is only with respect to the false arrest. And I'm just going to point out on the bottom of page 3 of the district court's opinion, maybe it was just a typo. He says on April 4, 2010, Howlett was acquitted of all charges by a jury. I believe that is just a typo. All right. So if you have anything else, I'll let you wrap up quickly. Yes, Your Honor. Just with respect to the probable cause, again, I'd refer you to look very closely at the Beaver v. Huckel case because in that case, the court held that where there is readily available evidence that may dissipate probable cause, that needs to be something considered by the police officer. Okay. Thank you. Thank you very much. Thanks to both counsel. We'll take the case under advisement.